JOSEPHUS A. KELLY *v.* A. C. FORD *et al.*

(No. 7986)

Submitted October 9, 1934. Decided October 16, 1934.

*Harvey W. Harmer,* for appellant.

*J. Paul Bumgardner,* for appellee Josephus A. Kelly.

HATCHER, JUDGE:

The plaintiff, J. A. Kelly, purchased three negotiable notes executed by defendant A. C. Ford, upon which defendant C. W. Brown was an indorser. The notes were dated January 3, 1928, were each for $250.00, and were payable in one, two and three years from date, respectively, at the First National Bank of West Union. In a suit to enforce payment Brown was held not liable on the two notes first maturing, and judgment was entered against him on the third. He appeals on the ground that the note was not presented for payment at the place designated, and that he did not receive the notice of dishonor required by law.

The plaintiff does not claim to have presented the note for payment at the designated bank. His counsel would excuse presentment on the theory that Brown did not have the money in the bank to take up the note at maturity, citing *Nichols* v. *Poole,* 47 N. C. 23. That case was between holder and maker—not holder and indorser —and is merely declaratory of Negotiable Instruments Law (Code 1931, 46-1 to 17, inclusive), section 70 of which provides: "Presentment for payment is not necessary to charge the person primarily liable," such as the maker of a note. The section continues: "But except as herein otherwise provided, presentment for payment is necessary in order to charge the drawer and indorser." The other provisions referred to are contained in sections 79, 80 and 82. Section 79 relates only to presentment to a drawer. Section 80 dispenses with presentment in case of an indorser "where the instrument was made or accepted for his accommodation," etc. Section 82 excuses presentment where with reasonable diligence it cannot be made; where it is waived; or where the drawee is fic-

titious. Consequently, those sections have no application to this situation.

Section 89, N. I. L., requires notice of the dishonor of a negotiable instrument to be given an indorser; otherwise he is discharged. The plaintiff claims that he mailed a letter to Brown on December 30, 1930, stating that the last note had not been paid, and asking Brown to come see him about it. The note was not due until January 3, 1931. Section 102, N.I.L., prescribes that "notice may be given as soon as the instrument is dishonored." Since the note was not due and had not been dishonored on December 30, 1930, the letter was premature and ineffective as a notice of dishonor.

Plaintiff testified that in October or November of 1930, he called Brown's attention to the notes and asked if he thought the maker would take care of them; and that Brown replied "he thought he (the maker) would". Notice of dishonor may be waived by implication. N. I. L., section 109. But to constitute an implied waiver, the acts of an indorser must be such as would warrant the holder in not taking the steps necessary to charge the indorser. See Uniform Laws, Ann. Vol. 5 (Neg. Insts.) section 109, Case notes (IV). Brown's involuntary opinion that the maker would pay the note was not such an act.

The liability of Brown as a general indorser was not to pay the note in any event. Under N. I. L., section 66, he engaged to pay the holder only if the note should be dishonored on presentment, "and the necessary proceedings on dishonor be duly taken." The regulations of the N. I. L. must be followed in order to charge an indorser. They were not observed in this case. Consequently, the judgment against Brown for the third note is reversed.

*Reversed.*